### STATE OF GEORGIA v. WENGER.
#### Civ. A. No. 1955.

District Court of United States
E. D. Illinois.
July 22, 1950.

978

Eugene Cook, Atty. Gen., for the State of Georgia, M. H. Blackshear, Jr., Deputy Asst. Atty. Gen., of the State of Georgia, Lamar Sizemore, Asst. Atty. Gen., for the State of Georgia, and W. Joe Hill, of Benton, Ill., for plaintiff.

Robert L. Lansden, Cairo, Ill., and Maurice J. Walsh, Chicago, Ill., for defendant.

WHAM, Chief Judge.

This is a tort action instituted by the State of Georgia to recover damages alleged to have resulted from a conspiracy to violate its revenue and regulatory laws with respect to intoxicating liquors and to violate the federal law and Constitution in regard thereto. In substance the complaint charges defendant, as a coconspirator, with selling and shipping to certain other coconspirators within the State of Georgia intoxicating liquor subject to Georgia tax and warehouse charges in the amount of $395,340.00, and evading said tax and warehouse charges. It is charged that as a result of the conspiracy, the State of Georgia has been damaged in the sum of .$395,340.00. Jurisdiction of this court is alleged to exist by virtue of 28 U.S.C.A. § 1331, giving to this court jurisdiction where the matter in controversy exceeds the sum or value of $3,000.00 exclusive of interest and costs and arises under the Constitution, laws or treaties of the United States. The State of Georgia contends that her action arises under the second section of the Twenty-first Amendment [1] to the Constitution of the United States and under the Webb-Kenyon Act, 27 U.S.C.A. § 122 [2].

Defendant has filed his motion to dismiss the complaint for want of jurisdiction, for failure to state a claim upon which relief can be granted, for failure of plain-

1. "Sec. 2. The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." Amendment XXI, § 2.

2. "The shipment or transportation, in any manner or by any means whatsoever, of any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind, from one State * * * into any other State * * * which said spirituous, vinous, malted, fermented, or other intoxicating liquor is intended, by any person interested therein, to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such State * * * is hereby prohibited." 27 U.S.C.A. § 122.

tiff to comply with the rules of this court and because the complaint does not show any authority for its institution. The last two grounds of the motion were disposed of on oral argument. The first two are now before this court for consideration.

The State of Georgia contends that the second section of the Twenty-first Amendment to the United States Constitution and the Webb-Kenyon Act create and guarantee in her a federal right which has been violated by the defendant and his fellow conspirators as described in the complaint, and that such violation of said right constitutes a tort on the part of defendant for which he should compensate plaintiff in damages. Plaintiff also contends that since the allegations of her complaint raise a federal question this court must assume jurisdiction and, having once assumed jurisdiction, even though the federal question be decided against plaintiff on the merits, must retain jurisdiction for the purpose of adjudicating the claim resting on state law.

■ There has been and there continues to be some confusion of views among the courts as to whether a United States District Court has any jurisdiction in a case allegedly arising under the Constitution and laws of the United States when consideration of the facts alleged and the Constitution and laws leads to the conclusion that the claim asserted by plaintiff does not as a matter of law arise under either the Constitution or the laws of the United States. According to the latest applicable decision of the Supreme Court, Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939, the rule seems to be that when a complaint is so drawn as to assert a claim allegedly arising under the Federal Constitution or laws which requires an interpretation thereof to determine whether the claim does so arise, jurisdiction of the case must be accepted by the court for the purpose of determining the question of law. The Fair v. Kohler Die Co., 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716. If the initial question of law is determined adversely to plaintiff the case must be dismissed, not on jurisdictional grounds but on its merits; otherwise it must be held for trial. The exception to this rule is found in the case in which it clearly appears that the asserted claim of a federal right is immaterial and made solely for the purpose of obtaining jurisdiction, or appears to be wholly insubstantial and frivolous. Such case should be dismissed for want of jurisdiction despite the assertion in the complaint of a claim under the Constitution or laws of the United States though even in such case the accuracy of calling such dismissal jurisdictional has been questioned. Bell v. Hood, supra.

■ In the complaint before the court the question as to whether plaintiff is entitled to recover depends upon an interpretation of 28 U.S.C.A. § 1331 and upon a determination of the scope and meaning of the Twenty-first Amendment and of the Webb-Kenyon Act. Though both the amendment and the act have been interpreted in a number of cases in which their scope and intended purpose have been stated, the precise question here presented has not been considered or adjudicated. Does either the amendment or the act by the specific prohibitions therein contained against the transportation or importation of intoxicating liquors into a state contrary to its laws or to be delivered or used contrary to its laws create in the offended state a civil right to damages against persons who unlawfully and willfully violate the prohibitions of the amendment and the act? The question is one of substance and under the authority of Bell v. Hood, supra, I must accept jurisdiction in this case.

On the merits of the case the question of law is presented as to whether plaintiff has stated a claim upon which relief may be granted. This question has two phases. First, whether the claim has any immediate basis in the Constitution or laws of the United States, and, if not, whether the court, having accepted jurisdiction to determine that question must retain jurisdiction in order to dispose of plaintiff's claim allegedly arising under the laws of the State of Georgia.

On the face of the complaint it is apparent that not only have the prohibitions of the Twenty-first Amendment and the

Webb-Kenyon Act been ignored, disregarded and violated by the conspirators named in the complaint, including the defendant, but the laws of Georgia have been violated so extensively and with such insolence and effrontery as to lead to the conviction that not only the named conspirators are wrongdoers but that there must be among the unknown conspirators mentioned in the complaint a substantial number of key enforcement officers in the State of Georgia who did not resist corrupting influences. If, under such facts, said amendment or act has given rise to any civil remedy in damages in the State of Georgia plaintiff has stated a claim upon which relief can be granted whether measured by the standards of lost taxes and warehouse charges asserted in the complaint or by some other standard.

The Webb-Kenyon Act was originally enacted on March 1, 1913, and was entitled "An Act divesting intoxicating liquors of their interstate character in certain cases". 27 U.S.C.A. § 122. Section 123 of said title which provided punishment for violation of the terms of the Webb-Kenyon Act was repealed in 1936, leaving no provision for any enforcement of said act either civil or criminal. Said act provides no civil remedy for damages caused by violations of its terms. The Webb-Kenyon Act was reenacted in 1935 without any enforcement provision.

A brief review of the history and background of the Webb-Kenyon Act will be helpful in arriving at its purpose and meaning. The case of Leisy v. Hardin, 135 U.S. 100, 10 S.Ct. 681, 34 L.Ed. 128, decided on April 28, 1890, had held that intoxicating liquor was an article of commerce within the meaning of the interstate commerce clause of the Constitution and that a statute of a state prohibiting the sale of any intoxicating liquors as applied to a sale by an importer from another state in the original package or keg with seals unbroken was unconstitutional and void as repugnant to the clause of the Constitution granting to Congress the power to regulate commerce with foreign nations and among the several states. Art. 1, § 8. Following that decision the Wilson Act,

26 Stat. 313, 27 U.S.C.A. § 121, was enacted by Congress on August 8, 1890 forbidding the sale of liquor in a state in the original package even although brought in through interstate commerce when the existing or future state laws forbade sales of intoxicants. The Wilson Act was upheld and applied by the Supreme Court in a number of cases but it was recognized that under the terms of that act the right to receive liquor was not affected and that such receipt and the consequent possession and the right to use the liquor so received remained protected by the commerce clause of the Constitution. Vance v. W. A. Vandercook Company, 170 U.S. 438, 18 S.Ct. 674, 42 L.Ed. 1100. To enable the states to close that loophole the Webb-Kenyon Act was enacted by Congress in 1913. In the case of Clark Distilling Company v. Western Maryland Ry. Co., 242 U.S. 311, at pages 323, 324, 37 S.Ct. 180, at page 184, 61 L.Ed. 326, the court, after adverting to its legislative and judicial history, said: "Reading the Webb-Kenyon Law in the light thus thrown upon it by the Wilson Act and the decisions of this court which sustained and applied it, there is no room for doubt that it was enacted simply to extend that which was done by the Wilson Act; that is to say, its purpose was to prevent the immunity characteristic of interstate commerce from being used to permit the receipt of liquor through such commerce in states contrary to their laws, and thus in effect afford a means by subterfuge and indirection to set such laws at naught. In this light it is clear that the Webb-Kenyon Act, if effect is to be given to its text, but operated so as to cause the prohibitions of the West Virginia law against shipment, receipt, and possession to be applicable and controlling irrespective of whether the state law did or did not prohibit the individual use of liquor. That such also was the embodied spirit of the Webb-Kenyon Act plainly appears, since, if that be not true, the coming into being of the act is wholly inexplicable."

Again the court said, speaking of said act, 242 U.S. on page 325, 37 S.Ct. on page 185:

"* * * that act did not simply forbid the introduction of liquor into a state for a prohibited use, but took the protection of interstate commerce away from all receipt and possession of liquor prohibited by state law.

"The movement of liquor in interstate commerce and the receipt and possession and right to sell prohibited by the state law having been in express terms divested by the Webb-Kenyon Act of their interstate commerce character, it follows that * * * there is no possible reason for holding that to enforce the prohibitions of the state law would conflict with the commerce clause of the Constitution; * * *."

In McCormick & Co. v. Brown, 286 U.S. 131 at page 141, 52 S.Ct. 522, 526, 76 L.Ed. 1017, the court said: "* * * there is no reason for denying to the Webb-Kenyon Act its intended application to prevent the immunity of transactions in interstate commerce from being used to impede the enforcement of the states' valid prohibitions."

No decision has been found that gives the Webb-Kenyon Act a broader scope or ascribes to it a meaning or purpose different from the meaning and purpose set forth in the excerpts from the opinions above quoted.

█ In so far as the Twenty-first Amendment has been subjected to judicial interpretation the same scope, meaning and purpose has been ascribed to it as to the Webb-Kenyon Act.

In Dugan v. Bridges, D.C., 16 F.Supp. 694 at page 706, the three-judge court, speaking of the Twenty-first Amendment through District Judge Morris, said: "Its language so closely follows the Webb-Kenyon Act as to lead us to the conclusion that it was copied therefrom and that it should receive the same construction as that given the last-mentioned act."

█ In State Board of Equalization of California v. Young's Market Co., 299 U.S. 59, 57 S.Ct. 77, 78, 81 L.Ed. 38, the Twenty-first Amendment is discussed at length in support of the conclusion that a license fee of $500 for the privilege of importing beer into the State of California is not invalid

in view of said amendment. The court said: "The amendment which 'prohibited' the 'transportation or importation' of intoxicating liquors into any state 'in violation of the laws thereof,' abrogated the right to import free, so far as concerns intoxicating liquors. The words used are apt to confer upon the state the power to forbid all importations which do not comply with the conditions which it prescribes."

In Carter v. Commonwealth of Virginia, 321 U.S. 131 at page 137, 64 S.Ct. 464, 468, 88 L.Ed. 605, the court, speaking of the Twenty-first Amendment said: "By interpretation of this Court the Amendment has been held to relieve the states of the limitations of the Commerce Clause on their powers over such (referring to intoxicating liquors) transportation or importation."

In United States v. Frankfort Distilleries, Inc., 324 U.S. 293 at page 300, 65 S.Ct. 661, 665, 89 L.Ed. 951, Justice Frankfurter, in his concurring opinion, states: "As a matter of constitutional law, the result of the Twenty-first Amendment is that a State may erect any barrier it pleases to the entry of intoxicating liquors. Its barrier may be low, high, or insurmountable. Of course, if a State chooses not to exercise the power given it by the Twenty-first Amendment and to continue to treat intoxicating liquors like other articles, the operation of the Commerce Clause continues."

█ Neither in the foregoing decisions relating to the meaning and purpose of the Webb-Kenyon Act and the Twenty-first Amendment nor from any that has been called to my attention or been found by independent research appears a hint that either the act or the amendment was intended to confer or does confer any civil remedy for damages upon a state into which liquor has been transported contrary to the prohibitions therein set forth. Both by history and by judicial interpretation in the light of history the intended scope and purpose of each is to divest liquor in interstate commerce of its interstate character so as to deprive it of all immunity from state control. Neither serves to give the states enforceable civil rights but only serves as enabling authority for

broader state legislation relating to intoxicants.

■ That the second section of the Twenty-first Amendment should have ascribed to it the scope and meaning above set forth seems entirely logical since it was the reasonable purpose of the Congress, the states and the people of the United States in connection with the repeal of the Eighteenth Amendment to place the states in position to put their respective policies relating to intoxicants into effect by state legislation without hindrance due to constitutional limitations applicable to ordinary articles of commerce. To effectuate this purpose the limitations imposed upon the power of the states by Sec. 8, Article 1, of the Constitution to regulate commerce among the several states were in large measure abrogated as relates to intoxicating liquor by the same amendment which repealed the Eighteenth Amendment. This was, in effect, a restoration of power to the states. Such restoration gave. the states no federal rights but gave back to them certain powers they had surrendered to the federal government through the Constitution. It restored to them the right and power by legislation to protect themselves as relates to intoxicating liquor. Congressional Record, Vol. 76, pt. IV, p. 4143. It also anticipated and rendered harmless a possible repeal of the Webb-Kenyon Act or the possibility that said act be held unconstitutional in so far as applied to interstate commerce.

■ The states having had their power to legislate for the aforesaid purposes restored and having legislated to that end, any rights accruing to the states whether in nature of a civil remedy or criminal action have their origin not in the Webb-Kenyon Act or in the Twenty-first Amendment that gave or restored to them the power to legislate but in the legislation enacted in exercise of the power. Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70.

■ In my opinion no legal right or cause of action of the nature asserted in plaintiff's complaint arises or can arise under the Webb-Kenyon Act or the Twenty-first Amendment. Neither the amendment nor the act gives rise to any legal right which will sustain a claim for damages by reason of the violation of the terms of either whether by an individual or through a conspiracy.

■ Being of the opinion first stated I am of the further opinion that this court is not required to retain the case to determine the merits of plaintiff's claim under the laws of the State of Georgia for the reason that the complaint states no federal cause of action but relies upon a Constitutional amendment and an act of Congress from which no cause of action can arise. Bell v. Hood, D.C., 71 F.Supp. 813, 817–821.

The several cases relied upon by the plaintiff to support her contention that it is the duty of this court to retain the case to determine plaintiff's rights under the state laws are distinguishable from the case here. An analysis of those cases shows that nearly all were equity cases in which considerations not recognized in a case at law often moved the court to retain jurisdiction. I have found no case among them either at law or equity, absent diversity of citizenship, where jurisdiction was retained to adjudicate rights grounded solely on state laws when the accompanying federal ground asserted to sustain the same cause of action had no basis, as here, either in a federal statute or in the Federal Constitution. These distinctions are pointed out clearly by Judge Mathes in Bell v. Hood, D.C., 71 F.Supp. 813, 817–821.

The case of Hurn v. Ousler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, relied upon by plaintiff well illustrates this point. In that equity suit for injunction there was but a single cause of action allegedly supported by a federal ground arising under the federal copyright laws and by the ground of unfair competition arising under state laws. Though the federal ground failed under the facts of the case it was a ground which had an indisputable basis in a federal statute. Under those circumstances the court retained the case to determine the rights of the parties.

arising under the state law and thus do complete equity. Even in that suit in equity I apprehend the court would have disposed of the case on the federal ground alone, leaving the plaintiff to proceed in the state courts if it had appeared that the asserted federal ground had no foundation in any provision of the Constitution or laws of the United States. In the case at law before this court I entertain no doubt that it must be disposed of on the asserted federal ground.

In view of the conclusions above stated the complaint must be and is dismissed on its merits because no claim is stated which arises under the Webb-Kenyon Act or the Twenty-first Amendment of the Constitution. For reasons stated I do not consider nor rule upon the merits of plaintiff's cause of action under state laws. Order accordingly, dismissing the complaint.